UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

CIVIL ACTION NO. 10-305-JBC

YVONNE DAY, et al.,                                                                                              PLAINTIFFS,

V.                               MEMORANDUM ORDER & OPINION

FORTUNE HI-TECH MARKETING, et al.,                                                          DEFENDANTS.

\* \* \* \* \* \* \* \* \* \*

This matter is before the court on the defendants' motion to compel arbitration and dismiss or stay action pending arbitration, R. 11.  For the following reasons, the motion will be granted.

I. BACKGROUND

The defendants filed their motion to compel arbitration in response to the plaintiffs' allegations of an illegal pyramid scheme operation.  The plaintiffs, former individual representatives ("IRs") of Fortune Hi-Tech Marketing, Inc. ("FHTM"), brought several claims against the defendants, including supposed violations of 18 U.S.C. § 1961-1968 "RICO" laws, the Kentucky Consumer Protection Act under KRS § 367, and Kentucky common law torts.  The defendants include FHTM, FHTM officers, and other individuals.  In their motion to compel arbitration, the defendants argue that the claims brought against them by the plaintiffs are covered by a valid arbitration agreement to which the plaintiffs are bound.  In support of this argument, the defendants point to two documents, the Application &

1

Agreement and FHTM's Policies and Procedures, which both contain arbitration provisions. The plaintiffs attest that they are not bound by an arbitration provision because there was no valid agreement to arbitrate between the parties. Despite the plaintiffs' arguments that the alleged arbitration agreement lacks assent, is illusory, and is unconscionable, the court finds that there is a valid agreement to arbitrate between the parties under which the plaintiffs' claims are covered; therefore, the motion to compel will be granted.

## II. ANALYSIS

The court is bound by the Federal Arbitration Act ("FAA"), which provides that "an agreement in writing to submit to arbitration an existing controversy arising out of . . ." "a contract evidencing a transaction involving commerce . . . " "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Before deciding whether to compel the parties to arbitrate under the FAA, the court must make four determinations:

> "first, it must determine whether the parties agreed to arbitrate; second, it must determine the scope of that agreement; third, if the federal statutory claims are asserted, it must consider whether Congress intended those claims to be nonarbitrable; and fourth, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration."

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000).

In making these determinations, "any doubts regarding arbitrability should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr.*

*Corp.*, 460 U.S. 1, 24-25 (1983). While Kentucky contract law will "govern[] in determining whether the arbitration clause itself was validly obtained," *Doctor's Assocs. V. Casarotto*, 517 U.S. 681, 686-87, the federal presumption in favor of arbitration is still taken into consideration. *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1014 (6th Cir. 2003).

    **a. Agreement to arbitrate**

        *i. Assent to the agreement*

A valid agreement to arbitrate exists between the plaintiffs and the defendants because an agreement including the arbitration provision was assented to by both parties. "When deciding whether the parties agreed to arbitrate a certain matter . . . , courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options v. Kaplan*, 514 U.S. 938, 944 (1995). The relevant facts, even construed most favorably to the plaintiffs, *see Lawrence v. Chancery Court of Tenn.*, 188 F.3d 687, 691 (6th Cir. 1999)(stating that "[w]hen considering a motion to dismiss. . . the district court . . . " should "construe the complaint liberally in favor of the plaintiff"), demonstrate that under Kentucky law a contract was formed between each of the plaintiffs and the defendants: the plaintiffs provided money and their consent to FHTM representatives, who enrolled the plaintiffs as IRs by agreeing to the Application & Agreement on their behalf, and the plaintiffs thereafter acted as IRs under the agreement and the Policies & Procedures.

The plaintiffs first argue that the arbitration provision lacks mutual assent.

3

They claim they never personally saw or signed the Application & Agreement, which contained an arbitration provision. They also allege that they did not see FHTM's Policies & Procedures, which includes a similar arbitration provision, until after their relationships with FHTM ended. But this argument fails under principles of agency and ratification. Even though the plaintiffs may not have actually signed the Application & Agreement or known of its existence at the time of enrollment, they are held to its contents; their consent to enrollment in the FHTM IR program by the FHTM representatives acted as consent to be bound by the terms of the enrollment program, which included the provisions of the Application & Agreement and the Policies & Procedures. Additionally, the plaintiffs' continued involvement in the FHTM program for a period of time after their enrollment ratified their agreements with FHTM.

A defendant has the burden of showing the existence of a contract. *Cantrell Supply, Inc. v. Liberty Mut. Ins. Co.*, 94 S.W.3d 381, 384 (Ky. App. 2002). Here, the defendants offer no proof that the plaintiffs actually signed the Application & Agreement. But the defendants have shown the execution of a contract through implied authority. "Implied authority is actual authority circumstantially proven which the principal actually intended the agent to possess and includes such powers as are practically necessary to carry out the duties actually delegated." *Mill Street Church of Christ v. Hogan*, 785 S.W.2d 263, 267 (Ky. App. 1990). The plaintiffs impliedly gave the FHTM representatives authority to agree to the terms of the Application & Agreement document when they paid the representatives, by

4

either cash or credit card, and provided their personal information to the representatives for the purpose of joining FHTM. Even though the plaintiffs claim that they did not intend for the FHTM representatives to agree to the terms of the Application & Agreement on their behalf, the circumstances surrounding the interactions between the plaintiffs and the FHTM representatives demonstrate implied consent.

When determining the existence of implied authority, the court must examine the point-of-view of the agent. *Id.* While one statement made by a party may not be enough to find an agency relationship, the "acts and conduct of the parties" can establish this authority. *Id.* The plaintiffs' conduct leading up to their enrollment in the FHTM program establishes "the apparent scope of the agent[s',] [meaning the FHTM representatives',] authority" to bind the plaintiffs to the enrollment documents. *Id.* at 268. For instance, before agreeing to join FHTM as IRs, each of the plaintiffs attended at least one meeting with an FHTM manager or representative. Some of the plaintiffs watched video presentations about FHTM or attended several FHTM meetings before joining. Each plaintiff also paid a $299 fee to join and, in some cases, additional fees for training rights or products. The plaintiffs explicitly agreed to become FHTM IRs and gave money to the FHTM representatives to enroll them.

The facts circumstantially show intent by the plaintiffs to give authority to the FHTM representatives to take all steps required to enroll the plaintiffs into the FHTM program. The plaintiffs displayed a level of interest in and knowledge of the

5

FHTM program by their attendance at meetings, payment of enrollment fees, and communication to the representatives that they wanted to join. It was "practically necessary" for the FHTM representatives to sign the Application & Agreement on behalf of the plaintiffs in order "to carry out the duties actually delegated" to them (which was enrollment in the FHTM program), and it was reasonable for the representatives to perceive the scope of their authority as extending to filling out the documents necessary for enrollment. *Id.* at 687.

Even if the FHTM representatives had no implied authority to sign the Application & Agreement on the plaintiffs' behalf, the plaintiffs ratified their contract with FHTM by their actions as IRs after they agreed to join FHTM. "Ratification is a question of fact, and, as applied to contracts, it may be express or implied." *Hofgesang v. Silver*, 232 Ky. 503, 508 (Ky. 1930). The enrollment contract between the plaintiffs and FHTM, which included the terms of the Application & Agreement, was ratified by the plaintiffs when they began reaping the benefits of FHTM IR status. Whether the plaintiffs actually earned money or not during their tenure as IRs, they were presented with the opportunity to earn money through access to FHTM products, materials, and the FHTM name.

Additionally, at least three of the four plaintiffs signed forms stating that they were trained by an FHTM representative after their enrollment. On these same documents, the FHTM trainers signed acknowledgements that they covered the FHTM policies and procedures during the training sessions. This shows that most of the plaintiffs were at least aware of a governing Policies & Procedures

6

document to which they were bound as IRs, and it places this case in conformity with the factual scenario of *Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967 (6th Cir. 2007) in which continued employment constituted assent to an arbitration provision in a contract that had been mailed to employees.  Here, while the Policies & Procedures document may have not been mailed to the plaintiffs, the plaintiffs were put on notice of its existence during the training sessions, so their continued actions as FHTM IRs constituted assent to the terms of that document, including the arbitration provision.

### ii. Mutuality of obligation

"An arbitration agreement may be invalidated for the same reasons for which any contract may be invalidated, including forgery, unconscionability, and lack of consideration." *Fazio v. Lehman Brothers, Inc.*, 340 F.3d 386, 392 (6th Cir. 2003). Here, the plaintiffs also argue that there is no valid agreement to arbitrate between the parties because the agreement was illusory and therefore there is no mutuality of obligation.  "Consideration is an essential element of every contract," and "[a] promise constitutes consideration for another promise only when it creates a binding obligation." *Floss v. Ryan's Family Steakhouses, Inc.,* 211 F.3d 306 (6th Cir. 2000) (internal citations omitted).  This means that without mutuality of obligation, "a contract based on reciprocal promises lacks consideration." *Id.* (citing Kentucky law).

Here, each of the FHTM documents containing the arbitration provisions includes a provision reserving FHTM's right to amend the documents.  The

Application & Agreement states that FHTM may amend the Application & Agreement, the Policies & Procedures, or the Marketing and Compensation Plan "from time to time." R. 27-1, p.2.  The Policies & Procedure permit FHTM to amend the Agreement at "its sole and absolute discretion." R.1-2, p.7.  The plaintiffs argue that these provisions make the agreement to arbitrate illusory because FHTM may unilaterally amend the agreement, and if they can alter or eliminate the arbitration provision at any time, they have no binding obligation to arbitrate.

Before addressing the merits of this argument, the court must first decide whether this is an issue within its jurisdiction to decide. The plaintiffs phrase their argument in terms of the illusory nature of the arbitration agreement itself but concede that "[t]he [purported] illusory nature of Fortune's alleged promise . . . extend[s] to all terms contained within the Policies & Procedures and Application & Agreement documents." R.22, p.17.  This is an important distinction.

> "Challenges to the validity of arbitration agreements are divided into two types: those that challenge the validity of the agreement to arbitrate itself; and those that challenge the contract as a whole on grounds that affect the entire agreement . . . or on the ground that one provision renders the whole contract invalid."

*Moran v. Svete*, 366 Fed. Appx. 624, 631 (6th Cir. 2010).

"Unless the challenge is to the arbitration clause itself, the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 445-46 (2006).

Any ruling that would deem the arbitration agreement illusory would in

essence be a ruling that the entire agreement between the parties is illusory; FHTM's ability to amend affects not only the arbitration provisions in both the Application & Agreement and Policies & Procedures, but also every other provision within those two documents. Recognizing that other district courts have examined the validity of arbitration provisions contained within broader contracts, the court cannot ignore that the plaintiffs' argument here in substance challenges the validity of the entire agreement between the parties. For that reason, the court will decline to review the merits of whether the agreement to arbitrate lacks mutuality of obligation and will defer to the arbitrator to consider the argument in the context of the entire agreement.

### iii. Unconscionability

The plaintiffs lastly argue that the agreement to arbitrate is unconscionable. They claim that the arbitration provision "is unfairly surprising because it is contained in a document not even accessible to the prospective IR at the time the IR agrees to enroll." R. 22, p.29. Again, the plaintiffs' argument alleging procedural unconscionability goes to the heart of the entire agreement between the parties, not just the arbitration provision. The plaintiffs do not contend that the arbitration provision is hidden within either of the documents or portrayed differently than any other provision; rather, they allege that the entire document, either the Application & Agreement or the Policies & Procedures, was not accessible to the plaintiffs. For the reasons stated above, the court will decline to address the merits of the plaintiffs' unconscionability argument, as it affects the

validity of all of the document's terms, not just the arbitration provision.

### b. Scope of the agreement

The court must next determine the scope of the arbitration agreement. Whether the plaintiffs' claims fall within the scope of the arbitration agreement is determined by asking whether "an action [for each claim] could be maintained without reference to the contract or relationship at issue." *Fazio v. Lehman Bros., Inc.*, 340 F.3d 386 (6th Cir. 2003). If so, the claims are likely outside the scope of the agreement. *Id.* Here, the plaintiffs claim RICO violations under 18 U.S.C. § 1962 (A), (C), & (D) and 18 U.S.C. § 1964 (A), violations of the Kentucky Consumer Protection Act, unjust enrichment, and conversion. In each of these claims, the plaintiffs reference the agreement between the plaintiffs and the defendants to some degree, including the defendants' marketing of the FHTM enrollment program, the payment of funds from the plaintiffs to the defendants, or the FHTM program itself. None of these claims could be brought without mention of the agreement or the relationship between the parties.

Also, the arbitration provisions at issue are broadly inclusive. The Application & Agreement states as follows:

> "all disputes and claims relating to FHTM, the Representative Agreement, the FHTM Marketing and Compensation Plan or its products and services, the rights and obligations of an independent Representative and FHTM, or any other claims or causes of action relating to the performance of either as independent Representative of FHTM under the Agreement or the FHTM Policies and Procedures shall be settled totally and finally by arbitration . . . ." R. 27-1, p.4.

All of the plaintiffs' claims relate to FHTM and fall within the scope of this broad

10

arbitration provision.

### c. Arbitrability of statutory claims & stay of non-arbitrable claims

Because the plaintiffs have asserted RICO claims, the court must consider whether Congress intended those federal statutory claims to be nonarbitrable. "[T]here is nothing in the text of the RICO statute that even arguably evinces congressional intent to exclude civil RICO claims from the dictates of the Arbitration Act." *Shearson/American Express v. McMahon*, 482 U.S. 220, 238 (1987). The RICO claims are thus arbitrable.

All of the claims asserted by the plaintiffs in this action are subject to arbitration; therefore, there is no need to determine whether a stay of proceedings pending arbitration is appropriate. The plaintiffs distinguish between the claims asserted against FHTM and its officers and the claims asserted against the individual defendants. They argue that even if an agreement to arbitrate were found between the plaintiffs and FHTM, the individual defendants, who are not agents of FHTM, could not enforce that arbitration agreement. The court, however, finds these facts analogous to the facts of *Arnold v. Arnold Corp.*, in which the court found that the alleged wrongful acts of the nonsignatory defendants related to their capacities as agents of the corporation defendant. 920 F.2d 1269, 1282 (6th Cir. 1990).

Even though FHTM states in the Application & Agreement that IRs are not agents or legal representatives of FHTM, the plaintiffs allege in their complaint that "[a]ll of the defendants in this action collectively form an 'enterprise'" and "are a

11

group of individuals and entities associated in fact, although not a legal entity." R.1, p.34.  If the plaintiffs "can avoid the practical consequences of an agreement to arbitrate by naming nonsignatory parties as [defendants] in [the] complaint, or signatory parties in their individual capacities only, the effect of the rule requiring arbitration would, in effect, be nullified." *Arnold*, 920 F.2d at 1281 (internal citations omitted).  The court will therefore enforce the arbitration agreement as it pertains to all defendants.  With all claims against all defendants being submitted to arbitration, a stay is not appropriate in this action.

### d. Waiver of right to judicial forum

Finally, the plaintiffs argue that even if an arbitration agreement is found to exist between the plaintiffs and defendants, arbitration is not appropriate because the plaintiffs have not waived their rights to adjudicate their claims in a judicial forum.  In evaluating whether an arbitration agreement is effective to waive the plaintiffs' right to pursue their claims in federal court, the court must

> "evaluat[e] whether a [waiver] has been knowingly and voluntarily executed, . . . look[ing] to (1) plaintiff[s'] experience, background, and education; (2) the amount of time the plaintiff[s] had to consider whether to sign the waiver, including whether the [plaintiffs] had an opportunity to consult with a lawyer; (3) the clarity of the waiver; (4) consideration for the waiver; as well as (5) the totality of the circumstances."

*Morrison v. Circuit City Stores*, 317 F.3d 646, 668 (6th Cir. 2003).

Here, the plaintiffs knowingly and voluntarily waived their rights to a judicial forum because the totality of the circumstances shows that the plaintiffs, after participating in meetings and/or informational sessions on FHTM, consented to enrollment in the FHTM program and thus consented to the arbitration provision.

12

The FHTM representatives executed the enrollment documents on behalf of the plaintiffs using implied authority. The plaintiffs had ample opportunity to explore the Application & Agreement and Policies & Procedures documents which contained the arbitration provisions after their enrollment in the program, and at least three of the plaintiffs were instructed on the Policies & Procedures during training sessions after they joined.

Additionally, the arbitration provisions are straightforward and clear about the "procedures that would be used in place of a judicial proceeding." *Alonso v. Huron Valley Ambulance Inc.*, 375 App. 487, 493 (6th Cir. 2010)(finding no judicial waiver when no information about the grievance procedure was provided to plaintiffs). The prescribed arbitration process has set parameters because it must be conducted "in accordance with the Federal Arbitration Act and the Commercial Arbitration Rules of the American Arbitration Association." R. 27-1, p.4.

This case is analogous to *Moore v. Ferrellgas*, in which the court found that the plaintiff knowingly and voluntarily waived his right to a judicial forum because he did not request extra time to consider an employee agreement or ask to contact a lawyer and nothing indicated that the plaintiff ever told the defendant that he did not understand the arbitration agreement or any portion of the employee agreement. 533 F. Supp. 2d 740, 748-49 (W.D. Mich. Feb. 8, 2008). While the plaintiffs here now contest the validity and existence of an arbitration agreement, during their period as IRs for FHTM, they were aware, or should have been aware, of the Policies & Procedures and its contents, yet nothing indicates that they

inquired into or questioned its provisions. Accordingly,

**IT IS ORDERED** that the defendants' motion to compel arbitration and dismiss or stay action pending arbitration, R. 11, is **GRANTED**.

**T**he court having determined that all claims are subject to arbitration, **IT IS FURTHER ORDERED** that this action is **DISMISSED** and **STRICKEN** from the active docket.

Signed on February 22, 2012

JENNIFER B. COFFMAN, JUDGE
U.S. DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY